**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

LOREN MITCHELL
MAGISTRATE IN CHANCERY

Date Submitted: July 9, 2026
Final Report: August 12, 2026

Andrew D. Cordo, Esquire
Jessica A. Hartwell, Esquire
Jillian Patterson, Esquire
Wilson, Sonsini, Goodrich & Rosati,
P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE 19801

David E. Kirk, Esquire
Y. Carson Zhou, Esquire
Kirk & Ingram, LLP
3411 Silverside Road, Suite 104B
Wilmington, DE 19810

RE:   *Maju Kuruvilla v. Bolt Financial, Inc.,*
      C.A. No. 2026-0435-LM

Dear Counsel,

Maju Kuruvilla, the former CEO, director, and officer of the Company seeks advancement of attorneys' fees and expenses under an Indemnification Agreement to defend a lawsuit brought by the Company. He also seeks to cover fees incurred for responding to the Company's pre-suit threatened litigation correspondence. The Company asserts that the separation and Release agreement, which carve out "claims related to rights to indemnification or insurance," do not preserve advancement, which the Company argues is a distinct right that was released. The Plaintiff argues that the carve out for indemnification-related claims encompasses advancement.

The parties also dispute whether advancement rights expired under the Agreement's durational clause and question whether the Plaintiff was "subject to" a proceeding, a requirement to receive advancement. The parties further dispute whether the Company may resist advancement based on its contention that the Indemnification Agreement resulted from an interested transaction that was not entirely fair to the Company.

For the reasons that follow, the Court grants Plaintiff's motion for summary judgment and denies the Company's cross-motion, concluding that the Release preserves Plaintiff's claim for advancement; that Plaintiff's advancement rights have not expired; that the Company's entire-fairness and validity defenses do not preclude a determination of advancement entitlement at this stage; and that Plaintiff is entitled to fees-on-fees.

## I.     FACTUAL BACKGROUND[1]

Maju Kuruvilla ("Plaintiff" or "Kuruvilla") was CEO of Bolt Financial, Inc. ("Defendant" or "Bolt" or the "Company").[2] Bolt is a financial technology company and a Delaware corporation with its principal place of business in San Francisco,

---

[1] The facts in this report reflect my findings based on the record developed at the hearing held on July 9, 2026. I grant the evidence, the weight, and credibility I find it deserves. Citations to the Docket are cited in the form of "D.I."

[2] D.I. 9 ¶ 4.

California.[3] Kuruvilla joined Bolt as its Chief Technology Officer in December 2020 and was promoted to CEO and joined the Board of Directors in January 2022.[4]

Kuruvilla and Ryan Loh, on behalf of Bolt, executed the Indemnification Agreement (the "Agreement") on April 29, 2022.[5] The Agreement states that Bolt will "indemnify[] and . . . advance expenses on behalf of [Kuruvilla]."[6] The Agreement spells out these obligations in different provisions.[7] Sections 1 through 4 address indemnification, while Section 5 separately addresses advancement. Bolt's obligations under the Agreement only "continue . . . so long as [Kuruvilla] shall be subject to any Proceeding."[8] Section 5 of the Agreement states:

> Notwithstanding any other provision of this Agreement, the Company shall advance all Expenses incurred by or on behalf of Indemnitee in connection with any Proceeding by reason of Corporate Status within thirty (30) days after the receipt by the Company of a statement or statements from Indemnitee requesting such advance or advances from time to time, whether prior to or after final disposition of such Proceeding. Such statement or statements shall reasonably evidence the Expenses incurred by Indemnitee and shall include or be preceded or accompanied by a written undertaking by or on behalf of Indemnitee to repay any Expenses advanced if it shall ultimately be determined that Indemnitee is not entitled to be indemnified against

---

[3] *Id.* ¶¶ 5, 8.

[4] D.I. 9 ¶ 8;  D.I. 13 at 3.

[5] D.I. 9 ¶ 9;  D.I. 1, Ex. A at 14.

[6] D.I. 1, Ex. A at 1.

[7] *Id.* §§ 1–4 (indemnification obligations), 5 (advancement obligations).

[8] *Id.* § 10.

such Expenses. Any advances and undertakings to repay pursuant to this Section 5 shall be unsecured and interest free.[9]

Section 10 of the Agreement states:

All agreements and obligations of the Company contained herein shall continue during the period Indemnitee is an officer or director of the Company (or is or was serving at the request of the Company as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise) and shall continue thereafter so long as Indemnitee shall be subject to any Proceeding (or any proceeding commenced under Section 7 hereof) by reason of his Corporate Status, whether or not he is acting or serving in any such capacity at the time any liability or expense is incurred for which indemnification can be provided under this Agreement.[10]

Section 13(f) of the Agreement defines "Proceeding" as:

any threatened, pending or completed action, suit, arbitration, alternate dispute resolution mechanism, investigation, inquiry, administrative hearing or any other actual, threatened or completed proceeding, whether brought by or in the right of the Company or otherwise and whether civil, criminal, administrative or investigative, in which Indemnitee was, is or will be involved as a party or otherwise, by reason of his or her Corporate Status, by reason of any action taken by him or of any inaction on his part while acting in his or her Corporate Status; in each case whether or not he is acting or serving in any such capacity at the time any liability or expense is incurred for which indemnification can be provided under this Agreement; including one pending on or before the date of this Agreement, but excluding one initiated by an Indemnitee pursuant to Section 7 of this Agreement to enforce his rights under this Agreement.[11]

---

[9] *Id*. § 5.

[10] *Id*. § 10.

[11] *Id*. § 13(f).

On July 17, 2023, while Kuruvilla was CEO of Bolt, Activant Venture Advisors, a Bolt investor sued Bolt's founder and directors, including Kuruvilla, in the Delaware Court of Chancery, alleging various claims on behalf of Bolt (the "Activant Action").[12] Bolt advanced Kuruvilla's fees for the Activant Action pursuant to the Agreement.[13]

While the Activant Action was pending, Bolt ended Kuruvilla's employment in March 2024.[14] On May 28, 2024, Kuruvilla executed a Release of Claims (the "Release") concerning Kuruvilla's separation from Bolt.[15] The Release provided Kuruvilla a salary of $1 million, paid his health insurance coverage, and granted him the acceleration of 153,583 shares of unvested stock and 2,246,781 additional restricted stock units.[16] In exchange, Kuruvilla agreed to a broad, general release and waiver of claims against Bolt and a covenant not to sue Bolt with respect to any such released claims.[17] At the time the parties executed the Release, the Activant

---

[12] D.I. 9 ¶ 17; *see Activant Ventures Advisors II, LLC v. Breslow*, No. 2023-0721-NAC, 2024 WL 5155787 (Del.Ch. Dec. 16, 2024).

[13] D.I. 1 ¶21.

[14] D.I. 9 ¶ 18.

[15] *Id*. ¶ 19.

[16] D.I. 1, Ex. B § 3.

[17] *Id*. §§ 6(a), 8.

Action remained pending against Kuruvilla. The Release contains an integration clause entitled "Complete and Voluntary Agreement."[18]

Section 6(c) of the Release states:

> You and the Company do not intend to release (i) claims that you may not release as a matter of law, including but not limited to claims for indemnity under California Labor Code Section 2802, (ii) any claims for enforcement of this Agreement, or (iii) claims related to rights to indemnification or insurance you have pursuant to contractual arrangements with the Company or its parent, corporate documents of the Company or its parent.[19]

Bolt continued to advance Kuruvilla's expenses in the Activant Action after the parties executed the Release.[20] On December 16, 2024, the Court of Chancery dismissed the claims against Plaintiff with prejudice in the Activant Action.[21] The Court retained jurisdiction to consider a request for attorneys' fees from Bolt only, not from Kuruvilla or the other former defendants.[22] After his dismissal, Kuruvilla continued to have his counsel monitor filings and hearings in the Activant Action,

---

[18] *Id*. § 15.

[19] *Id*. § 6(c).

[20] D.I. 11 at 18; D.I. 13 at 20.

[21] D.I. 13 at 5; *Activant Ventures Advisors II, LLC v. Breslow*, No. 2023-0721-NAC, 2024 WL 5155787 (Del.Ch. Dec. 16, 2024).

[22] D.I. 13 at 5.

and his counsel was served with a copy of document requests directed to another party.[23]

Approximately three months after Kuruvilla's dismissal from the Activant Action, on March 29, 2025, Bolt sent a letter to Kuruvilla about potential litigation Bolt was considering filing against him for alleged misconduct and breach of fiduciary and confidentiality obligations while he was CEO.[24]   Bolt sent Kuruvilla a draft complaint concerning these allegations on January 13, 2026, and filed a complaint against Kuruvilla in California Superior Court on January 27, 2026 (the "California Action").[25]   As required by the Agreement, Kuruvilla sent Bolt an advancement demand for fees and expenses incurred in connection with the California Action on January 22, 2026, a related invoice on January 26, 2026, and a repayment undertaking on January 29, 2026.[26]   Bolt refused Kuruvilla's demand on March 6, 2026.[27]

---

[23]  D.I. 16 at 17;  D.I. 18 at 16.

[24]  D.I. 9 ¶ 23;  D.I. 13 at 6, 23.

[25]  D.I. 9 ¶¶ 23, 24;  D.I. 13 at 6, 23.

[26]  D.I. 1, Exs. C–E;  D.I. 9 ¶¶ 27, 28;  D.I. 13 at 6.

[27]  D.I. 1, Ex. F;  D.I. 9 ¶¶ 27, 28;  D.I. 13 at 6.

On March 31, 2026, Kuruvilla filed a verified Complaint in this action, demanding advancement of fees and expenses related to the California Action.[28] On April 27, 2026, Bolt filed an answer to the Complaint.[29] The parties thereafter filed cross-motions for summary judgment.[30] On July 9, 2026, the Court held an oral argument on the cross-motions for summary judgment and took this matter under advisement.[31]

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.[32] Ordinarily, the Court views the record in the light most favorable to the nonmoving party.[33] But when the parties file cross-motions for summary judgment and neither identifies a material factual dispute, Court of Chancery Rule 56(h) permits the Court

---

[28] D.I. 1;  D.I. 13 at 6.

[29] D.I. 9.

[30] D.I. 11;  D.I. 13.

[31] D.I. 21.

[32] *Am. Legacy Found. v. Lorillard Tobacco Co.*, 886 A.2d 1, 18 (Del. Ch. 2005), *aff'd,* 903 A.2d 728 (Del. 2006) (footnotes omitted).

[33] *Id.*

to treat the motions as a stipulation for decision on the existing record.[34]  In that circumstance, the Court decides the merits based on the record presented without drawing the usual inferences in favor of either party.[35]

### B.    The Release preserved Kuruvilla's advancement rights.

The Release states that "[Kuruvilla] and [Bolt] do not intend to release . . . claims related to rights to indemnification or insurance [Kuruvilla] ha[s] pursuant to contractual arrangements with [Bolt]."[36]  Bolt claims that "[Kuruvilla's] right to advancement was released," while Kuruvilla claims that his right to advancement was not released.[37]

This Court has interpreted "related" according to its Black's Law Dictionary definition: "[c]onnected in some way."[38]  In this matter, although advancement and indemnification are distinct contractual rights under the Agreement, the Agreement treats advancement as a payment mechanism tied to indemnification.[39]  A claim for

---

[34]  *Id.*

[35]  *Id.*

[36]  D.I. 1, Ex. B § 6(c).

[37]  D.I. 18 at 4;  D.I. 16 at 3.

[38]  *ITG Brands, LLC v. Reynolds Am., Inc.*, 2023 WL 6383240, at *9 (Del. Ch. Oct. 2, 2023), *judgment entered*, (Del. Ch. 2025), and *aff'd*, 351 A.3d 519 (Del. 2025) (quoting *Related*, *Black's Law Dictionary* (11th ed. 2019)).

[39]  *See generally,* D.I. 1, Ex. A §5 (advancement obligations outlined in the indemnification agreement);   D.I. 1 Ex. A § 7(d)–(e) (additional advancement obligations in the

advancement is therefore connected to indemnification, and is a "claim [] related to rights of indemnification" within the meaning of the Release.[40]

Bolt resists this conclusion by attempting to distinguish between "claims related to rights to indemnification" and "rights related to indemnification," arguing that because the Release does not expressly cover "rights related to indemnification," claims for advancement fall outside it.[41] That distinction does not follow from the language the parties chose. Section 6(c) does not merely preserve a right to indemnification; it preserves claims "related to" rights to indemnification. The relevant question is therefore whether a claim seeking advancement is related to indemnification—not whether the two rights are identical. The Release does not release Kuruvilla's claim for advancement because a claim for advancement is a "claim[] related to rights to indemnification," within the meaning of Section 6(c).[42]

---

indemnification agreement). D.I. 1 Ex. B § 6(c) (Release); § 1–4 (indemnification obligations), 5 (advancement obligations); *Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 509 (Del. 2005) (quoting *Weinstock v. Lazard Debt Recovery GP, LLC*, WL 21843254, at *4 (Del. Ch. Aug. 8, 2003)).

[40] D.I. 1, Ex. B § 6(c); *Related*, *Black's Law Dictionary* (12th ed. 2024); *Kaung*, 884 A.2d 500, 509.

[41] D.I. 13 at 13; D.I. 1, Ex. B § 6(c).

[42] D.I. 1, Ex. B § 6(c).

### C. Advancement and indemnification are separate but related contractual rights.

Bolt argues that the parties, represented by "experienced outside counsel" would have expressly referenced advancement in the Release had they intended to preserve advancement claims, and that the absence of such a reference is dispositive.[43] That argument, however, assumes the Release needed to specifically say "advancement" to cover it, but the term "indemnification" has been interpreted, in its broad sense, to include advancement.[44] That means no express reference to advancement is necessary if that broad interpretation was used here, which it was. While the Agreement uses indemnification in its narrow sense in certain places, its title and opening paragraphs use the term broadly, as do Bolt's Amended and

---

[43] D.I. 13 at 11–13; *Active Asset Recovery, Inc. v. Real Est. Asset Recovery Servs., Inc.*, 1999 WL 743479, at *11 (Del. Ch. Sept. 10, 1999).

[44] *GreenMarbles, LLC v. Cushing*, 2025 WL 2081565, at *3 n.18 (Del. Ch. July 24, 2025); *see, e.g., Davis v. EMSI Holding Co.*, 2017 WL 1732386, at *6 (Del. Ch. May 3, 2017) (holding that advancement was implicitly included in indemnification); *Sodano v. Am. Stock Exch. LLC*, 2008 WL 2738583, at *11 (Del. Ch. July 15, 2008), *aff'd sub nom. Am. Stock Exch. LLC v. Fin. Indus. Regul. Auth., Inc.*, 970 A.2d 256 (Del. 2009) (holding that advancement was implicitly included in indemnification).

Restated Bylaws.[45]   On that usage, the absence of an express reference to advancement is not "dispositive" of anything, contrary to Bolt's position.[46]

Delaware law confirms the relationship this broad usage reflects. "[T]his court [has] held that language stating that [indemnification] shall continue . . . include[s] the right to advancement . . . ."[47]  Additionally, advancement has been described as "a subsidiary concept within the broader topic of indemnification," even though "advancement and indemnification are not synonymous."[48]  The Delaware Supreme Court has likewise recognized that "the right to advancement 'is a subsidiary element of the right to ultimate indemnification.'"[49]  These authorities do not collapse the two concepts into one.  Rather, they establish that advancement is not an independent contractual right divorced from indemnification.  Advancement exists to aid the ultimate right to indemnification by requiring a company to pay

---

[45]   D.I. 1, Ex. A at 1 ("[H]ighly competent persons have become more reluctant to serve corporations . . . unless they are provided with adequate protection through insurance or adequate indemnification . . . . The Bylaws and Certificate of Incorporation and the DGCL expressly provide that the indemnification provisions set forth therein are not exclusive . . . .").

[46]   *See* D.I. 13 at 13, 15.

[47]   *Sodano*, 2008 WL 2738583, at *11.

[48]   *Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 589 (Del. Ch. 2006).

[49]   *Kaung*, 884 A.2d at 509.

litigation expenses as they are incurred, subject to repayment if indemnification is unavailable.

That relationship is what matters under the language the parties actually selected. Had Section 6(c) preserved only claims "for indemnification," Bolt's distinction between the two rights might carry greater force. But the parties instead preserved claims "related to rights to indemnification," language that reaches beyond claims seeking ultimate indemnification itself and, given the legal and functional connection between the two rights, naturally encompasses claims seeking advancement.

For that reason, Bolt's interpretation is difficult to reconcile with both the contractual language and Delaware law. Had the parties intended to extinguish advancement claims notwithstanding that broader language, they could have done so expressly. They did not. Instead, they chose broader language preserving claims related to indemnification.

### D. Kuruvilla's advancement rights did not expire.

Section 10 of the Agreement provides advancement rights "shall continue . . . so long as [Kuruvilla] shall be subject to any [Bolt-related] Proceeding."[50] Section

---

[50] D.I. 1, Ex. A § 10.

13(f) defines Proceeding to include "threatened, pending or completed" matters in which Kuruvilla "was, is or will be involved" by reason of his Corporate Status.[51]

Bolt argues that the Agreement's failure to specify advancement rights for "future Proceeding[s]" means the Agreement does not preserve Kuruvilla's advancement rights.[52] This argument fails for two reasons. First, Section 13(f) contemplates forward-looking proceedings by including that a Proceeding includes matters an indemnitee "will be involved" in.[53] Second, even if the Agreement does not specifically use the term "future Proceeding[s]," this Court held in *Charney v. American Apparel, Inc.* that "subject to any [Proceeding]" means "exposed to being sued" in a "Proceeding."[54] The Court reasoned that, because the statute of limitations for breach of fiduciary duty claims was three years, and the potentially advanceable proceeding was initiated within three years of Charney ceasing to be an officer, "he was exposed to being sued" during that three-year period and thus was still "subject to [a] Claim."[55]

---

[51] D.I. 1, Ex. A § 10, 13(f).

[52] D.I. 13 at 21–22.

[53] D.I. 1, Ex. A § 13(f).

[54] D.I. 13 at 21–22 (quoting *OrbiMed Advisors LLC v. Symbiomix Therapeutics, LLC*, 2024 WL 747567, at *5–6 (Del. Ch. Feb. 23, 2024)); *see Charney v. Am. Apparel, Inc.*, 2015 WL 5313769, at *9–10 (Del. Ch. Sept. 11, 2015); *see also* D.I. 1, Ex. A § 10.

[55] *Charney*, 2015 WL 5313769, at *9–11.

Similar to *Charney,* the language in the Agreement here also allows advancement when one is "subject to any Proceeding."[56] Section 13(f) broadly encompasses "threatened, pending or completed" proceedings in which Kuruvilla "was, is or will be involved" by reason of his Corporate Status. By using "any Proceeding" and not "the Proceeding," the parties contemplated that the Agreement would operate with respect to proceedings extending beyond those actually pending when Kuruvilla was terminated from Bolt. Reading Section 10 to terminate all rights once a particular pending proceeding ended would contradict that forward-looking language. Nothing in that language ties the Agreement's duration to a single identified proceeding. Applying the rationale from *Charney* here, Kuruvilla's advancement rights have not expired and will continue for as long as Kuruvilla is exposed to being sued 'by reason of' his former status as an officer of Bolt.

Kuruvilla has been "['exposed to being sued' in a Bolt-related] Proceeding" since he left Bolt, so his advancement rights have not expired.[57] Thus, the Agreement's advancement provisions cover Bolt's threatening and filing of the California Action, and Kuruvilla is entitled to advancement for the California Action. No mention of "future Proceeding[s]" is necessary to extend Kuruvilla's

---

[56] *Id.* at *9–10.

[57] *Id.* at *9–10; D.I. 1, Ex. A § 10.

advancement rights to "future Proceeding[s]" because "future Proceeding[s]" are implicitly included within the meaning of the phrase "subject to any Proceeding."[58]

The parties spent time arguing whether Kuruvilla remained "subject to" the Activant Action after his dismissal with prejudice, with Kuruvilla arguing he was still "involved as a party or otherwise" and Bolt arguing that once Kuruvilla was dismissed with prejudice, he was no longer subject to a Proceeding, ceasing Bolt's advancement obligations.[59]  However, because Bolt threatened and subsequently filed the California Action, Plaintiff was 'subject to' a Proceeding under Sections 10 and 13(f).  The Court therefore need not resolve whether Kuruvilla's post-dismissal monitoring of the Activant Action independently maintained 'subject to' status.

### E.    Entire fairness and validity defenses are not appropriate at this stage.

Despite Bolt's assertion, the outcome of this case does not depend on whether the Agreement or Release are entirely fair.  The question presented here is narrower: whether, under the operative agreements, Kuruvilla is presently entitled to advancement.  Bolt remains free to pursue any plenary challenge to the validity or fairness of the Agreement, but that challenge does not prevent the Court from

---

[58]  D.I. 13 at 21–22;  D.I. 1, Ex. A § 10.

[59]  D.I. 1, Ex. A §§ 10, 13(f);  D.I. 13 at 21;  D.I. 16 at 17.

deciding Kuruvilla's contractual entitlement to advancement in this proceeding. Bolt claims that "the parties must proceed with limited discovery and a trial on the entire fairness of the Indemnification Agreement" before deciding whether Kuruvilla has advancement rights, while Kuruvilla claims that his advancement rights should be decided now on summary judgment.[60]

Kuruvilla's advancement rights should be decided on summary judgment because Delaware law states that advancement proceedings are summary in nature, and "the scope of an advancement proceeding . . . is limited to determining 'the issue of entitlement according to [Bolt's] advancement provisions.'"[61] That limited inquiry reflects the distinct purpose of advancement: determining who bears litigation expenses while the underlying dispute remains unresolved, rather than adjudicating the merits of that dispute. For purposes of this summary proceeding, the Court assesses entitlement under the Agreement and Release as written.[62] Bolt's entire fairness/authorization arguments concern the validity of those instruments and

---

[60] D.I. 18 at 23;  D.I. 16 at 22–23.

[61] *Kaung*, 884 A.2d at 509.

[62] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 213–14 (Del. 2005) (footnotes omitted) (Advancement proceedings are "usually summary in nature and limited to determining the issue of entitlement in accordance with the corporation's own uniquely crafted advancement provisions. . . . The limited and narrow focus of an advancement proceeding precludes litigation of the merits of entitlement to indemnification.").

may be pursued plenarily, but they do not alter the contractual entitlement analysis here.  It would frustrate the very purpose of advancement if Kuruvilla had to litigate underlying fiduciary duty, fairness, or similar claims as a condition to securing entitlement to advancement in the first place.

Thus, Bolt's allegations concerning Kuruvilla's conduct may ultimately bear on other claims or defenses, but they do not expand the scope of this advancement proceeding.

### F. Kuruvilla is entitled to fees-on-fees.

Kuruvilla seeks the fees and expenses he incurred in successfully enforcing his advancement rights in this action.  Delaware law permits recovery of such fees-on-fees when an indemnitee successfully prosecutes a claim for advancement.  "The same policy considerations justifying allowance of fees-on-fees for indemnification claims pursued by directors equally support an award of fees for the successful prosecution of an advancement claim . . . ."[63]  Without such an award, an indemnitee who is forced to sue to obtain advancement would bear the cost of enforcing the very right designed to relieve him of the financial burden of defending covered proceedings.

---

[63] *Jackson Walker L.L.P. v. Spira Footwear, Inc.*, 2008 WL 2487256, at \*8–9 (Del. Ch. June 23, 2008) (footnote omitted).

Kuruvilla has essentially achieved full success here. He sought a determination that (1) the Release preserved his advancement rights; (2) the rights remained in effect under the Indemnification Agreement; and (3) that Bolt must advance the expenses associated with the California Action. The Court has ruled in his favor on those issues and rejected Bolt's arguments that the Release extinguished advancement, that the advancement right expired, and that Bolt's entire-fairness and validity defenses must be resolved before advancement may be ordered.

Although the Court does not accept Kuruvilla's alternative contention that he remained "subject to" the Activant Action after his dismissal with prejudice, that alternative theory does not diminish that he was essentially fully successful on the relief sought in this action, entitling him to reasonable fees and expenses incurred in prosecuting this advancement action.

## III.  CONCLUSION

For the reasons explained above, I **GRANT** Plaintiff's motion for summary judgment and **DENY** Defendant's motion for summary judgment. The parties shall meet and confer and submit a proposed order implementing this decision that

includes a plan for resolving fee disputes consistent with the procedures used in *Danenberg v. Fitracks*.[64]

This is a Final Report under Court of Chancery Rule 144. Any party who wishes to file exceptions to this report must file their notice of exceptions within three business days.

Respectfully submitted,

*/s/ Loren Mitchell*

Magistrate in Chancery

---

[64] *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 1003–04 (Del. Ch. 2012).